Curia, per Withers, J.
The end arrived at by all the rules of location, is to establish for the plaintiff, in an action to try the title, the lines run or described in the grant he produces, where, as in this case, such a muniment of title is produced, elder and therefore paramount. If the original surveyor made his tracks, the object is to retrace them ; if he platted by description, the object is to fulfil the terms of it, so far as the evidence may permit and no law or adverse proof may overrule.
Since then the object is to follow the original surveyor, it is proper to begin where he did, if that point can be ascertained ; at all events not to reverse the direction of his movements until, in pursuing them, we have reached a point beyond which his footprints are no longer to be discerned.
In regard to those lines that involve this contest, the direction of the original survey was from an easterly to a west-wardly point. It may well be conjectured that the surveyor did not actually run the line along the Williams boundary, as the corners represented do not appear to have been marked. Yet the distance is given, 49 chains, and so is the course, S. 80 W. To establish that line, especially its termination westwardly, is all-important in this question of location. On that line the boundary called for is the Williams tract. Its beginning point is on the Mathews tract. That tract is represented on the re-survey. The Williams tract is satisfactorily located. Then there seems to be a propriety in beginning to trace that line either fiom the Mathews tract, or from the eastern corner of the Williams tract. It is not material in this case at which point, of these two, we may begin. The course of the plaintiff on that boundary is controlled by the line of Williams. Where shall he stop 1 *226 His distance falls short of that of the Williams line ; the latter terminates at B. Was the point B designed by the surveyor of plaintiff’s plat to be his corner as well as that of Williams ? was¡ t]jgn must be confined to it. That question was distinctly submitted to the jury, and they have decided that B was plaintiff’s corner. If there was evidence to lead to that conclusion, what is there in the testimony to overrule it ? There was evidence enough to sustain such a finding by the jury, and we can discern none which shews that they were wrong. It is sustained by the facts, 1st that B is a corner of ■Williams’ land ; 2d the plaintiff’s platt calls on that line for no other boundary, as to any portion of it; 3d more than his distance is secured by adopting that line, which is, so far, a favorable location for him. The plaintiff would go beyond B ; what is to justify that 1 No adjacent boundary, no marked object, neither distance, nor quantity, nor the form of the plat, nor any necessary mode of closing with the next nearest ascertained point, can lead us beyond B. If the surveyor passes that, where shall he stop ? We must, therefore, concur with the jury in fixing B as one corner for the plaintiff.s
From that point how shall we proceed ? The survey must be guided by such means as the plaintiff affords. His plat gives course and distance, and represents a comer between B and G. If G be given, and we have also the course from that, and there be nothing to control that course, the mode of closing is not at all doubtful; the lines must be run, by course, from the two ascertained points, and the place of intersection will show the intermediate comer. Now the point G is given; it is confessedly a corner for plaintiff. The result has been stated ; the intermediate comer will be found at H, which is fatal to the plaintiff. If the line from G be conformed to certain old marked timber for a portion of the distance, the result to this case would be the same. In so closing from the ascertained points, B and G, there is no departure from the elements of location which the plaintiff’s own plat affords, except in the particular of distance. In closing by any other mode from B to G, we should abandon the description of that plat, both as to course and distance, not to mention shape also, which would be necessarily incident to the other variations.
If the mode of closing between B and G was indicated by the plaintiff’s platt to be by a single line instead of by two constituting an intermediate corner, the case of Cain Hodge might be invoked. If distance be taken on the course from B, and the like be doné on the course from G, and the points so made be closed by a straight line, while this would give three lines and two corners, instead of two lines and one corner, and be wholly unauthorized by any rule of location, the trespass would at the same time be excluded.
We shall not dwell upon the fact, that the grant under *227 which the defendant claims, was located in the year and within a few months next following the date of the plaintiff’s, so as to include the locus in quo. It called for land, using the language, “said to be General Sumter’s,” or some equivalent words. It is probable either that General Sumter’s land was not located the year preceding, as the plaintiff claiming under him, now contends, or it was so carelessly and negligently designated, as to invite an intrusion by a subsequent grantee. When a plaintiff comes into Court with a grant and plat which, though older, is surrounded by obscurity, arising either from the fact that the survey has been made at the fire-place, rather than on the field, or from any other description of carelessness, he is not entitled to demand that we shall push, to a fanciful extent, or strain inordinately the idea, sometimes indulged, that the elder grant is to be more favorably located.
We think the finding of the jury in this case is more conformable to the rules of location as they apply to the facts adduced, than any other which we could prescribe. Unless we could dictate a better re-survey than that which is sanctioned by their verdict, it ought to stand; and, therefore, the motion must be refused.
Evans, Wardlaw and Frost, JJ. concurred.

Motion refused.